UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JIAXING HUANG,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　Defendant. | Case No. 24-cv-06298-RS<br><br>**ORDER GRANTING IN PART, DENYING IN PART MOTION TO DISMISS** |

## I. INTRODUCTION

Pro se Plaintiff Ms. Huang has sued the government, arguing that the Internal Revenue Service ("IRS") wrongly penalized her for failing to report gifts from her foreign parents on time. She claims that she justifiably relied on TurboTax, that it advised her incorrectly, and that she took corrective measures immediately. Plaintiff faults the agency for refusing her reasonable cause explanation, as well as for arbitrarily inflating the penalty amount to more than double the proper sum and then deflating it without explaining its reasoning. She also claims the agency lacks authority to penalize her and that the penalty assessments did not comply with a statutory requirement for written supervisory approval. Defendant moves to dismiss the complaint, arguing that the court lacks jurisdiction and that Plaintiff fails to state her claims. For the reasons explained below, the motion is denied as to Plaintiff's first claim, regarding the reasonable cause determination, and the motion is granted as to Plaintiff's three other claims.

## II. BACKGROUND

In 2015 and 2016, Plaintiff Jiaxing Huang received gifts from her non-resident foreign parents to help her permanently relocate to the U.S. and acquire a house. At the time, she filed her taxes with the help of TurboTax. Then and now, TurboTax advises users that, "If you received the money, no matter how much or how little, you don't report anything"—the gift-giver does. So, Plaintiff did not report the gifts from her parents.

In April 2018, Huang learned that, as the gifts were from a foreign source, she was obliged to file a certain document called Form 3520. She promptly filed the Form 3520s for 2015 and 2016, and the IRS responded by automatically assessing penalties for not filing them sooner— $62,496.25 for 2015 and $28,742.50 for 2016. Internal documents show that an acting manager approved these assessments on October 16, 2018. Dkt. No. 14-6. Plaintiff received notice of those penalties and submitted a reasonable cause letter, requesting abatement. Dkt. No. 14-4. That request was denied on September 12, 2019, after the IRS determined that Plaintiff had failed to show reasonable cause or due diligence. Dkt. No. 14-3. The IRS subsequently withheld $280 in refunds during Plaintiff's 2019 tax year and $7,859 during 2022.

Following the denial of her reasonable cause request, Plaintiff requested a review from the IRS Appeals Division on November 8, 2019. She stated that "her ignorance of the law relating to the reporting requirements resulting from the receipt of a gift from a foreign person" was a reasonable cause not due to willful neglect. Dkt. No. 14-5 at 7. During the course of her appeal, the IRS mysteriously caused the penalty to increase to over $153,000 ("significant errors" according to Plaintiff's complaint), amounting to nearly $190,000 with interest. Plaintiff avers this increase was arbitrary and more than doubled the original penalty without reason.

On August 4, 2023, the Appeals Division issued an Appeals Transmittal, abating $117,243.25 of the inflated penalty. Dkt. No. 22-1. The complaint avers that the IRS noted this resolution was "based on 'Hazards of Litigation.'" Compl. ¶ 4. The remaining $36,495.50 in penalties was sustained due to lack of reasonable cause. *Id.* ¶¶ 3–4.

Plaintiff paid the post-abatement assessment in full, with interest, on February 13, 2024.

Less than two weeks later, she filed a Form 843 Claim for Refund and Request for Abatement (still involving the 2015 and 2016 tax years), checking the box for "reasonable cause" as the basis for her claim. Dkt. No. 14-2. Her complaint avers that more than six months have passed since she sought the refund, with no response from the IRS.

Plaintiff now seeks $35,573.43 as refund for the unlawfully assessed penalties, $280 as refund from the 2019 tax year, and $7,859 as refund from her 2022 tax year, plus attorney fees, costs, and expenses. Her claims are (1) that she had reasonable cause for late-filing the initial Form 3520s; (2) that (a) automatically assessing and then (b) randomly doubling the penalties was arbitrary and capricious under the APA; (3) that the IRS lacks statutory authority to assess and collect such penalties; and (4) that the penalties are invalid because the IRS failed to obtain written supervisory approval as required by 26 U.S.C. § 6751.

On May 10, 2025—just days before the hearing on the instant motion—the IRS responded to Plaintiff's Form 843 and notified Plaintiff that it had revised the 2016 tax amount (originally clocked at $28,742.50, then inflated to some unknown proportion of $153,738.75, then subsequently abated to some unknown proportion of $36,495.50). Together with the notice came a refund check worth $13,018.90 for the year 2016. Apparently, Defendant's counsel advised her not to deposit the check because the IRS is expected to cancel it; Plaintiff has not deposited and is holding it pending further instruction. Dkt. Nos. 24, 25. At oral argument on the motion, Defense counsel represented that the IRS needed the check returned so as to cancel it. Compounding the confusion, counsel also represented that the IRS may be in the process of automatically issuing a further refund check, which Plaintiff once again apparently should not cash.

Defendant moves to dismiss the complaint on two grounds: first, that this court lacks jurisdiction, and second, that the complaint fails to state any viable claims.

### III. LEGAL STANDARD

A complaint must be "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While "detailed factual allegations" are not required, a complaint must have sufficient factual allegations to state a claim that is "plausible on its face."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). This standard "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–79. The plausibility determination is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Id.* at 679.

A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction over the claims asserted. As Plaintiff is the party seeking to invoke the court's jurisdiction, she bears the burden of establishing it. *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375 (1994); *Stock West, Inc. v. Confederated Tribes of the Colville Reservation,* 873 F.2d 1221, 1225 (9th Cir. 1989). Such motion may be made on the grounds that the complaint fails to present such a jurisdictional basis, i.e., that the lack of jurisdiction appears from the "face of the complaint," or as a matter of fact based on extrinsic evidence apart from the pleadings. *Warren v. Fox Family Worldwide, Inc.,* 328 F.3d 1136, 1139 (9th Cir. 2003); *McMorgan & Co. v. First Calif. Mortgage Co.,* 916 F.Supp. 966, 973 (N.D.Cal. 1995).

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the claims alleged in the complaint. Such a dismissal may rest on either the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *See Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (internal quotation marks and citation omitted). When evaluating a Rule 12(b)(6) motion, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1140 (9th Cir. 2017). It must also "draw all reasonable inferences in favor of the nonmoving party." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

# IV. DISCUSSION

## A. 6039F Claim (i.e. Reasonable Cause determination)

Plaintiff's First Claim is that she provided reasonable cause for her late-filed forms: the topic at issue is obscure, she's not a tax expert, and she relied on TurboTax advice, akin to relying on professional tax advice. She cites *United States v. Boyle*, where the Supreme Court found that relying on tax professionals can be reasonable. 469 U.S. 241, 246 (1985). A related opinion by the Tax Court has elaborated on the professional advice standard, creating a three-prong test: "(1) [t]he adviser was a competent professional who had sufficient expertise to justify reliance, (2) the taxpayer provided necessary and accurate information to the adviser, and (3) the taxpayer actually relied in good faith on the adviser's judgment." *Neonatology Assocs. v. Comm'r of Internal Revenue*, 115 T.C. 43, 99 (2000); *see also* 26 C.F.R. § 1.6664-4(c)(2) (noting that the taxpayer's education, sophistication, and business experience is relevant in determining whether reliance on tax advice was reasonable and made in good faith). As Plaintiff's reasonable cause letter states, she used TurboTax, a program which alerted her to certain obligations but affirmatively advised her there was no need to report the gifts in question. She claims she input the proper data and relied on TurboTax's responsive advice, and moreover, that TurboTax amounts to the sort of "competent professional" that justifies her reliance.

Defendant first argues that this court lacks jurisdiction to hear this claim. By law, a district court has jurisdiction over a tax refund suit only if the taxpayer has duly filed a refund claim with the agency prior to suing. 26 U.S.C. § 7422(a). Although Plaintiff did so, Defendant highlights that regulations oblige the taxpayer to provide sufficient detail of "each ground upon which a credit or refund is claimed." 26 C.F.R. § 301.6402-2(b)(1). Because Plaintiff's Form 843 Refund request only stated "As instructed in a fax sent by the IRS Appeals Team Manager [], I'm requesting the claim be immediately disallowed," and featured a checked "reasonable cause" box as the basis for the claim, Defendant argues that Plaintiff failed to raise all the grounds she now raises.

This argument is inapplicable to Plaintiff's first claim, regarding the reasonable cause for

her delay. To be sure, it may support dismissing some of the other claims in the suit that are not raised in her agency claim (*i.e.*, lack of authority, lack of signature, arbitrary and capricious conduct). None of those arguments, however, go to the reasonableness of the delay that led to her penalty assessment. In her Form 843, Plaintiff checked the box for "reasonable cause." Moreover, Plaintiff had already appealed the denial of her reasonable cause letter, detailing the reasons why she believed there was reasonable cause for her delay. The agency certainly had sufficient detail of at least this aspect of the complaint, and so the jurisdictional argument fails.

Perhaps predicting such failure, Defendant argues in the alternative that Plaintiff's allegations are too threadbare to demonstrate reasonable cause. The IRS contends that Plaintiff fails to allege that she entered complete and accurate data about each gift into TurboTax's prompts, and that she failed to seek advice from any professionals. Moreover, Defendant notes, this district has previously rejected a reasonable cause argument based on the use of TurboTax, *see Spottiswood v. United States*, No. 17-cv-209-MEJ, 2018 WL 1933521 (N.D. Cal. Apr. 24, 2018).

What Defendant fails to mention about *Spottiswood*, however, is that the determination as to reasonable cause came on summary judgment—not a motion to dismiss, the stage of litigation this case has only just reached. At present, the question is whether the averments in the complaint plausibly state a claim for reasonable cause. In this context, "[t]axpayers seeking abatement . . . bear the burden of showing they 'exercised ordinary business care and prudence [but were] unable to file the return within the prescribed time.'" *Spottiswood*, 2018 WL 1933521, at *3 (quoting *Boyle*, 469 U.S. at 244). The same standard applies whether taxpayers seek abatement of a late-notice or a late-payment penalty. *See Baccei v. United States*, 632 F.3d 1140, 1148 (9th Cir. 2011); *see also* Treas. Reg. § 301.6651-1(c)(1) (implementing regulations defining "ordinary business care and prudence" as demonstrated when a taxpayer "made reasonable efforts to conserve sufficient assets in marketable form to satisfy his tax liability and nevertheless was unable to pay all or a portion of the tax when it became due.").

Plaintiff has satisfied these requirements. She detailed in her appeal of the denied reasonable cause claim that she acted with ordinary business care and prudence. As noted in the

ORDER GRANTING IN PART, DENYING IN PART MOT. TO DISMISS
CASE NO. 24-cv-06298-RS

6

complaint and proven by documents attached to her reply brief, Turbotax told Plaintiff "If you received the money, no matter how much or how little, you don't report anything." Compl. at ¶ 15; Dkt. No. 22-3 (TurboTax screenshot). Confusion is, apparently, a common issue. *See* Dkt. No. 22-2 at 5 (noting Taxpayer Advocate's Office found that more than two-thirds of these penalties are abated, in part because they are automatically assessed). Moreover, Plaintiff acted promptly to report the gifts as soon as she realized the need to do so. "Although ignorance of the law alone is not sufficient to constitute reasonable cause, Plaintiff also alleges other factors such as h[er] inexperience in tax matters, and the complexity of the area of law. Combined, those factors could be found by the finder of fact to constitute reasonable cause." *Congdon v. United States*, No. 4:09-cv-289, 2011 WL 3880524, at *4 (E.D. Tex. Aug. 11, 2011), *report and recommendation adopted,* No. 4:09-cv-289, 2011 WL 3880564 (E.D. Tex. Aug. 31, 2011).

The same reasoning holds true here and warrants denying the motion to dismiss as to Plaintiff's reasonable cause claim. The complaint plausibly alleges that she had reasonable cause for delay—especially in light of the fact that, "generally, the most important factor in determining whether the taxpayer has reasonable cause and acted in good faith is the extent of the taxpayer's effort to report the proper tax liability." *Id.*, at *3. (quoting Treas. Reg. § 1.6664–4(b)(1)). Moreover, to the extent Defendant argues that her Form 843 was too sparse to have put the IRS on notice of this argument, Plaintiff fairly notes that the IRS itself told her to "file a claim on Form 843 . . . with a statement requesting your claim be immediately disallowed," instructions which she followed to a T. That her more fulsome explanation came in an earlier letter (which she later supplemented on appeal) does not eliminate its existence; to the contrary, the agency was well-aware of her arguments before this suit was filed. Considering that the Tax Court itself has ruled that reliance on tax software in good faith can support a reasonable cause defense, *see Olsen v. Comm'r*, No. 11658-10S, 2011 WL 5885082, at *2 (T.C. 2011), it is premature to dash her claim at the pleadings. The case shall proceed to the merits as to the IRS's denial of Plaintiff's reasonable cause claim.

### B. Arbitrary and Capricious Administration of 6039F Penalties

Plaintiff also contends that the IRS acted arbitrarily and capriciously in the way it assessed the penalty. She claims the penalty was applied without a thorough evaluation and also faults the agency for unjustifiably multiplying the penalty amount.

Plaintiff did not claim arbitrary and capricious treatment in her refund claim with the agency, only raising her disagreement with the reasonable cause determination. Moreover, judicial review under the APA is contemplated only for "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. As the Supreme Court has observed, "Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action." *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988). Because her refund action is itself an adequate remedy in court, Defendant argues, she cannot raise a parallel APA claim. *See Starr Int'l Co., Inc. v. United States*, 910 F.3d 527, 536 (D.C. Cir. 2018) (holding that § 7422 [the tax refund suit statute] was the "appropriate vehicle" to challenge administrative action, not the APA, because § 7422 provided an adequate remedy).

The *Starr* court, however, faced the situation where a plaintiff alleged the same facts under *either* the APA or Section 7422. Plaintiff here has a more nuanced complaint. On the one hand, she alleges that the denial of her reasonable cause claim was arbitrarily automatic—an effective duplicate of her Section 7422 argument that the claim was wrongly denied. That component of this claim is barred by her parallel claim under Section 7422.

On the other hand, however, Plaintiff alleges that the IRS arbitrarily multiplied her penalty substantially and then removed a portion of it. *See* Dkt. No. 22-1 (attached to opposition, letter from IRS stating only that they "recommend removing $117,243.25 of the $153,738.75 penalty stated above"); *see also* Dkt. No. 22-4 (tax attorney noting that IRS agent "acknowledged the error and has put a request in to appeals account resolutions specialists to remove the additional $62,500 as well as the original $62,500"). Clearly, even the IRS recognizes that an error occurred, and that error is distinct from its determination as to her reasonable cause claim. Because the calculation

1   error is distinct from the reasonable cause denial, the *Starr* court's reasoning is inapt in this regard;

2   there is no alternative adequate remedy for that component of her claim.

3       Nevertheless, the fact remains that the IRS has since rectified this error. At argument,

4   counsel explained how there was a mistaken duplication of the 2015 penalty and confirmed that

5   the subsequent abatement of her penalty amount resolved the issue. Because it appears that the

6   issue is moot, the claim is dismissed without prejudice. Were similar errors to recur against

7   Plaintiff, she may alert the court at that time.

### C. Lack of Authority to Assess and Collect the Penalties

    Plaintiff's most specious claim is that the IRS lacks authority to collect penalties under Section 6039F. She asserts that, because that section is in Chapter 61 rather than Chapter 68 of the Internal Revenue Code, it shouldn't be collected like any other tax pursuant to Section 6671(a).

    Defendant notes this argument is based on *Farhy v. Comm'r of Internal Revenue*, 160 T.C. 399, 400 (2023), *rev'd and remanded*, 100 F.4th 223 (D.C. Cir. 2024), where the Tax Court determined the IRS lacks authority to collect penalties under 26 U.S.C. § 6038(b) because Congress failed to explicitly authorize as much. *Id.* at *3–4. The D.C. Circuit subsequently reversed the Tax Court and held that such penalties *are* subject to IRS collection, *see Farhy v. CIR*, 100 F.4th 223 (D.C. Cir. 2024), but the Tax Court has stated that it will follow its own precedent on the matter when cases are in distinct circuits. *See Mukhi v. Commir of Internal Revenue*, 162 T.C. 177, 194 (2024), *adhered to on reconsideration,* No. 4329-22L, 2024 WL 4815052 (T.C. Nov. 18, 2024). Because Section 6038 and 6039F are analogous, both Plaintiff and Defendant argue that that they warrant the same analysis—in Plaintiff's view, leading to the claim she raises, while in Defendant's view, scuttling the claim along the lines of the D.C. Circuit's order.

    The D.C. Circuit's *Farhy* opinion persuasively highlights that "Congress renders penalties assessable in more ways" than through explicit reference alone, including by "implication." *Farhy*, 100 F.4th at 235–36. The agency has been collecting 6039F penalties for decades. *Id.* .at

225.  It makes no sense to suggest that a penalty placed within the tax code is outside the IRS's power to assess and collect.  Congress certainly doesn't seem to think so.  *See, e.g., Commodity Futures Trading Comm'n v. Shor*, 478 U.S. 833, 846 (1986) ("It is well established that when Congress revisits a statute giving rise to a longstanding administrative interpretation without pertinent change, the congressional failure to revise or repeal the agency's interpretation is persuasive evidence that the interpretation is the one intended by Congress.") (internal quotation omitted).  Moreover, Section 6039F provides for a reasonable cause defense (just like the Section 6038 statute analyzed in *Farhy*).  As the court in *Farhy* emphasized, if the "penalty was not assessable, there would be no post-assessment administrative process in which the taxpayer could make a reasonable cause showing to the Secretary."  *Farhy*, 100 F.4th at 233.

Moreover, Plaintiff failed to raise this aspect of her argument in her reasonable cause claim filed with the agency, rendering it waived.  Because she did not include it in her agency claim, the lack of authority claim here is dismissed.

**D. Failure to Comply with Section 6751(b) (i.e., Approval in Writing)**

Plaintiff's final claim is that the agency failed to comply with the statute requiring supervisor's written approval before a penalty may be assessed.  In her complaint, she avers that she requested the relevant tax records and none of them provided the name of the supervisor who approved the 2015 and 2016 penalties, nor whether any approval came from the decisionmaker's immediate supervisor.

Defendant points out that the supervisory approval need not precede the first communication to the taxpayer that purports to impose a penalty.  *See Laidlaw's Harley Davidson Sales, Inc. v. Comm'r of Internal Revenue*, 29 F.4th 1066, 1072 n. 6 (9th Cir. 2022).  It also does not require any particular form of written approval.  *See TOT Prop. Holdings, LLC v. Comm'r of Internal Revenue*, 1 F.4th 1354, 1372–73 (11th Cir. 2021).  Plus, written approval is not always in the form of a signature.  *See Deyo v. United States*, 296 F.App'x. 157, 159 (2d Cir. 2008).  "The plain language of [section] 6751(b) mandates only that the approval of the penalty assessment be 'in writing' and by a manager . . . ."  *PPBM-Rose Hill, Ltd. v. CIR*, 900 F.3d 193, 213 (5th Cir.

2018).

Here, the record shows that a manager approved an assessment of $62,496.25 and a different assessment of $28,742.50 on October 16, 2018. Dkt. No. 14-6. This would seem to resolve Plaintiff's claim as to the 2015 and 2016 penalties. Although this evidence is attached to the motion, the complaint incorporates it by reference. *See* Compl. ¶¶ 46-50 (referencing this document). In her opposition papers, Plaintiff fairly contends that the document fails to prove that the manager who approved the assessment was the immediate supervisor of the decisionmaker. The statute, however, states "the immediate supervisor" *or* "such higher level official as the Secretary may designate." 26 U.S.C. § 6751. Moreover, Defendant's waiver argument likewise applies here, considering Plaintiff never made this argument at the agency.

### E. CONCLUSION

As explained above, Defendant's motion to dismiss is denied with respect to Plaintiff's first claim regarding her reasonable cause claim, which therefore may proceed. The motion is granted with respect to Plaintiff's other three claims.

**IT IS SO ORDERED**.

Dated: May 28, 2025

RICHARD SEEBORG
Chief United States District Judge